# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JEREMIAH JOHNSON, on Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>GENERAL MILLS, INC. and YOPLAIT USA, INC.,<br><br>          Defendants. | Case No.: SACV 10-00061-CJC(ANx)<br><br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT** |

## I.      INTRODUCTION AND BACKGROUND

Plaintiff Jeremiah Johnson ("Plaintiff") filed this lawsuit against General Mills, Inc. and Yoplait USA, Inc. (together, "General Mills") on January 14, 2010.  The suit arises from General Mills' marketing of the Yo-Plus yogurt product.  Plaintiff alleges that General Mills marketed Yo-Plus as regulating "digestive health" in a manner that other commercially available and less expensive yogurts do not.  Plaintiff alleges that this

advertising claim was false and deceptive, while General Mills stands by the representations.  The operative Second Amended Class Action Complaint ("SAC") states three causes of action: (1) violations of the California Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq.*, (2) unlawful business acts and practices in violation of California Business and Professions Code section 17200, *et seq.* ("UCL"), and (3) violations of the state consumer protection laws of all 50 states.  (Dkt. No. 280.)

After extensive litigation, including substantial discovery, two motions for summary judgment, *Daubert* motions, motions *in limine*, and the certification of the class and subsequent decertification of the CLRA claim, the parties reached a settlement dated February 1, 2013.  (*See* Dkt. No. 292 [O'Brien Decl. in Supp. of Mot. for Final Approval of Settlement ("O'Brien Decl.")] ¶¶ 2, 63–144.)  The settlement purports to resolve this litigation on a nationwide basis and will resolve four similar lawsuits filed in the Southern District of Florida, the Northern District of Ohio, the District of New Jersey, and in Arkansas state court.[1]  The Arkansas case was voluntarily dismissed, and the federal courts in the remaining three cases have either stayed those cases or taken no action pending the outcome of the instant case.

The settlement agreement entered into by the parties provides for a national settlement class comprised of all persons who purchased Yo-Plus branded products in the United States between July 26, 2007 and July 5, 2012.  (Stipulation of Settlement ["Stipulation"] § II(A) ¶ 37.)  It requires General Mills to create a non-reversionary settlement fund of $8.5 million to be distributed to class members on a claims-made basis.  (*Id.* at § II(A) ¶ 38.)  Yo-Plus purchasers may obtain $4 for each unit of Yo-Plus

---

[1]  The remaining cases are: *Fitzpatrick v. General Mills, Inc.*, Case No. 0:09cv60412 (S.D. Fla., filed March 17, 2009); *Brock v. General Mills, Inc.*, Case No. 1:10-cv-00060-DAP (N.D. Ohio, filed Jan. 12, 2010); *Amin v. General Mills, Inc.*, Case No. 2:10cv305 (D.N.J., filed Jan. 19, 2010); and *Horne v. General Mills, Inc.*, Case No. CV-2010-17 (Ark. Cir. Ct. Lonoke Cnty., filed Jan. 13, 2010).

they purchased (a unit typically contains 4 individual containers) in exchange for releasing any claims they may have against General Mills with the exception of personal injury claims.  (*Id.* at § II(A) ¶ 40, § IX.)  Any unclaimed amount will be distributed *cy pres* to the National Consumer Law Center ("NCLC") and the Mayo Clinic.  (*Id.* at § IV(B) ¶ 3.)   The settlement amount also includes the costs of notice and administration, an award of attorneys' fees, and incentive awards for Plaintiff as well as the named plaintiffs in the three related federal actions.   (*Id.* at § X.)

On March 6, 2013, the Court issued two Orders preliminarily certifying the settlement class, preliminarily approving the Stipulation and the terms and conditions of the settlement set forth therein, approving the form and method of class notice, appointing Class Counsel and the Class Representative, and setting a schedule and final approval hearing.  (Dkt. Nos. 283, 284.)  Plaintiff now moves for an order granting final approval of the settlement, including an award of attorneys' fees in the amount of $2.55 million, an award of expenses in the amount of $896,387.09, and service awards of $1,500 to each named plaintiff in the nationwide settlement, including the plaintiffs in the related *Fitzpatrick*, *Brock*, and *Amin* actions.  For the following reasons, Plaintiff's motion is **GRANTED** in its entirety.

## II.    DISCUSSION

When the parties reach a settlement agreement prior to class certification, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The Court will first assess the propriety of class certification, followed by the fairness of the settlement agreement, the adequacy of the notice, attorneys' fees and costs, and plaintiffs' service awards.

### a.  Certification of the Class

A plaintiff seeking class certification must satisfy two sets of requirements under Federal Rule of Civil Procedure 23: (1) the four requirements under Rule 23(a) concerning numerosity, commonality, typicality, and adequacy, and (2) the requirement that the action fall within one of the three "types" of classes described under the subsections of Rule 23(b).  In this case, Plaintiffs seek certification of the class pursuant to Rule 23(b)(3), which allows certification if "the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court previously concluded that Plaintiffs had presented sufficient evidence to show that the proposed class satisfied the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a) as well as the predominance and superiority requirements under Rule 23(b)(3).  (Dkt. No. 283.)  Having reviewed those elements again, the Court adopts its prior analysis with respect to class certification.  Accordingly, the Court grants certification of the class for the purposes of settlement only.

### b.  The Settlement

The Ninth Circuit has a " 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.' " *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)).  The Ninth Circuit recognizes "an overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Notwithstanding the policy favoring settlement, Federal Rule of Civil Procedure 23 "

'requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable' " in order to protect the interests of the class members. *Staton*, 327 F.3d at 959 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (emphasis omitted)).  To determine whether this standard is met, a district court must consider a number of factors, including " 'the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.' " *Id.* (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  Having fully considered the *Staton* factors, the Court finds this settlement fundamentally fair and reasonable to the parties involved.

The settlement agreement appears to be fair in its terms and thoroughly negotiated. The settlement was the product of arms-length negotiations reached after formal mediation with the Honorable Stuart T. Waldrip (Ret.).  (O'Brien Decl. ¶ 10.)  There is no indication that the settlement was a result of fraud or overreaching.  The relative strength of Plaintiff's case and the risk, expense, and complexity of litigation, as well as the risk of maintaining class status and the likely duration of further litigation, all weigh heavily in favor of settlement.  While class counsel believe the litigation has merit, they "recognize that Plaintiff faced significant risks and uncertainties."  (Pl.'s Mem. in Supp. of Final Approval ["Pl.'s Mem."] at 11.)  The case involves complex issues including "the scientific relationship between the components contained in Yo-Plus and the human digestive system, whether 'digestive health' has meaning from an objective, scientific standpoint, the extent and meaning of Yo-Plus' marketing efforts, and the measure of damages available to Yo-Plus purchasers."  (O'Brien Decl. ¶ 9.)  Given the contested nature of the case, it is likely that the trial result would have been appealed, delaying any payment to the class members.  This action also presents a risk that Plaintiff would not be

able to maintain class action status throughout the proceedings as class certification has been hotly contested.  General Mills opposed the certification of the original California class in February 2011 and later moved to decertify the class in August 2011.  (Dkt. Nos. 100, 132.)

The amount offered in settlement also supports approval.  The settlement provides for a common fund of $8.5 million, and class members will receive compensation of $4.00 per unit of the Yo-Plus yogurt product at issue, which exceeds the retail price class members actually paid for the product.  (O'Brien Decl. ¶ 2.)  Class members can seek recovery for up to 13 units of the product without proof of purchase.  (*Id.*)  This is a good result for the class, and further, any residual settlement amount will not revert to General Mills.  Instead, it will be distributed *cy pres* to the National Consumer Law Center and the Mayo Clinic to further the objectives underlying the relevant statutes and the interests of the silent class members.[2]

This litigation is at a very advanced stage and extensive discovery has been conducted.  Not only have the parties been actively and exhaustively litigating this action since 2010, they began litigating the *Fitzpatrick* action in 2009, (O'Brien Decl. ¶ 23), and the *Amin*, *Brock*, and *Horne* actions in 2010, (*id.* ¶¶ 147, 159).  The *Ftizpatrick* action involved significant discovery, including expert reports, and the class certification issue reached the Eleventh Circuit Court of Appeals in arguments held in early 2011.  (*See* O'Brien Decl. ¶¶ 23–62.)  The *Amin*, *Brock*, and *Horne* actions were not litigated to the same extent, but at least some discovery was propounded in each of those actions.  (*See id.* ¶¶ 145–166.)  Throughout all four cases, over 600,000 pages of discovery was produced to class counsel, and class counsel conducted and defended over 30 depositions

---

[2]  In its preliminary approval order, the Court assessed the propriety of the NCLC and the Mayo Clinic as *cy pres* beneficiaries and concluded that both were appropriate recipients of any remaining settlement funds.  (Dkt. No. 283 at 10.)

and issued 20 subpoenas to marketing agencies and scientific researchers aside from written discovery requests to General Mills.  (O'Brien Decl. ¶ 19).  Significant discovery and trial preparation were conducted in this case specifically.  (*See* O'Brien Decl. ¶¶ 68–76.)  The particular case involved contentious class certification proceedings, two motions for summary judgment brought by General Mills, various *Daubert* motions concerning several experts, and many motions *in limine*.  (*See* O'Brien Decl. ¶¶ 81–144.)  This case was set for trial on December 4, 2012, but on November 19, 2012, the parties filed a stipulation seeking to continue the final pretrial conference and trial in light of a potential settlement.  (*See* Dkt. No. 276.)  In light of the advanced stage of the proceedings, both parties have sufficient knowledge of the strength and weaknesses of their respective cases to enter into an informed settlement.

Further, experienced class counsel believe that the results achieved by the settlement are fair and reasonable.  Mr. O'Brien of Robbins Geller Rudman & Dowd LLP states: "Plaintiff believed it is in his best interest and the best interest of the Class to settle the case with General Mills on the terms proposed."  (O'Brien Decl. ¶ 15.)  He believes the settlement is "an excellent result, " (*id.* ¶ 16), which "provide[s] Settlement claimants with greater than full compensation for their purchases with little to no burden," has "symbolic value," and "serves the general goals of the false advertising statutes," (*id.* ¶ 2.)  Mr. O'Brien and his firm are experienced in consumer class action litigation and he is well-equipped to evaluate the settlement.  (*See* O'Brien Fee Decl. Exh. G [Robbins Geller Rudman & Dowd LLP firm resume].)   Mr. O'Reardon, who is also vastly experienced in this area of the law, (*see* O'Brien Decl. Exh. 8 [Blood Hurst & O'Reardon LLP firm resume]), believes that the settlement meets the requirements for final approval, that there was more than enough information to evaluate the strength and weaknesses of the claims, and that the settlement amount is reasonable and adequate.  (O'Reardon Decl. ¶ 2.)  Finally, the reaction of the class members also suggests that the settlement is fair.  As of June 10, 2013, no exclusion requests or objections have been received.  (*See* Dkt. No. 293

Exh. 1 [Supplemental Keough Decl. Regarding Notice and Settlement Administration] ¶ 6.)   *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps more accurately the absence of a negative reaction, strongly supports settlement.").

### c.  Sufficient Notice

The notice provided to the settlement class was also adequate under Rule 23.  Rule 23(e)(1) requires that when a proposed settlement has been reached, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts."  *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, No. 06-02069 SBA, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).  The notice must contain information concerning the nature of the action; the definition of the class; the class claims, issues or defenses; that a class member may enter an appearance through an attorney; that a class member may request exclusion; and that the settlement has binding effect.  Fed. R. Civ. P 23(c)(2)(B).

Here, the notice to the class complied with these requirements for the reasons discussed in the Court's Order preliminarily approving the settlement.  (*See* Dkt. No. 283 at 11–12.)  Further, the parties subsequently stipulated to, and the Court approved, modifications to the notice plan to provide information regarding exclusion in the long-form notice, (Dkt. No. 287), and to maintain the reach of the internet component of the plan when unforeseen circumstances arose, (Dkt. No. 289).  The class notice plan conducted by The Garden City Group, Inc. was successful and notice was disseminated

through "nationwide magazine print publications, hundreds of highly trafficked websites including Facebook.com and Yahoo.com, a national newspaper magazine distributed through more than 800 newspapers across the country, and through a press release that had the opportunity to be picked up by more than 1,100 nationwide English and Spanish news outlets and blogs." (O'Brien Decl. Exh. 14 [Keough Decl. Regarding Notice and Settlement Administration] ¶ 4.) A website and 24/7 toll-free, live-operator telephone number were also set up to provide additional exposure and assist with answering questions, submitting claims, and receiving additional information. (*Id.*)

After considering the terms of the settlement, the Court finds that it is fair, reasonable, and accurate. Further litigation would involve significant risk and expense. The amount offered in settlement appears rational, and the parties settled the case after sufficient discovery to evaluate the merit of the class members' claims.

### d.  Attorneys' Fees

Class counsel moves for an award of attorneys' fees and costs. A district court has the authority and the duty to determine the fairness of attorneys' fees in a class action settlement, even if the parties have already agreed to an amount. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011). The amount of fees to be awarded rests in the court's sound discretion. *See Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). When attorneys' fees will be paid from a common fund, "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage," and "the district court must assume the role of fiduciary for the class plaintiffs*." Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1302 (9th Cir. 1994).

When a settlement results in a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine attorneys' fees. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. Using the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.*; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Ninth Circuit has approved percentage awards in common fund cases where the class of beneficiaries is sufficiently identifiable, the benefits can be accurately traced, and the fee can be shifted with some exactitude. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). The lodestar method multiplies the number of hours the prevailing party reasonably expended on litigation by a reasonable hourly rate for the lawyer. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941. The lodestar figure is "presumptively reasonable," but "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " *Id.* at 941–42 (internal citations omitted). The lodestar should "only be enhanced or reduced in 'rare and exceptional cases.' " *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Where a court employs the percentage-of-recovery method, the lodestar method is often used as a cross-check to assess reasonableness. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050–51 (9th Cir. 2002).

Class counsel request a fee award of $2.55 million, or 30% of the total settlement fund. This amount is provided for in the settlement agreement. (Stipulation at § X(A).) The Court is reluctant to depart upward from the 25% benchmark endorsed by the Ninth

Circuit in common fund cases, but finds that doing so is appropriate in this instance because special circumstances exist.  Class counsel in this case are the firms Blood Hurst & O'Reardon LLP and Robbins Geller Rudman & Dowd LLP.  Robbins Geller Rudman & Dowd LLP is also counsel of record in the related *Fitzpatrick*, *Amin*, *Horne*, and *Brock* litigation and Blood Hurst & O'Reardon LLP has been actively involved in the prosecution of those actions as well.  (O'Brien Decl. Exh. 1 [O'Brien Fee and Expense Decl. on Behalf of Robbins Geller Rudman & Dowd LLP ("O'Brien Fee Decl.") ¶¶ 1–2; O'Brien Decl. Exh. 2 [O'Reardon Decl. in Supp. of Mot. for Final Approval of Class Action Settlement ("O'Reardon Decl.") ¶ 1.)  Blood Hurst & O'Reardon LLP represents that it has expended 2,090.75 hours in litigating this action, resulting in a lodestar figure of $1,124,819.25.  (O'Reardon Decl. ¶ 6.)  Robbins Geller Rudman & Dowd LLP represents that it has invested 13,399.25 hours for a loadstar amount of $5,979.140.00. (O'Brien Fee Decl. ¶ 4, Exh. A.)   Together, the firms spent 15,490 hours on this case and the related cases for a total lodestar amount of $7,103.959.25.[3]  (Pl.'s Mem. at 37.)  However, class counsel now request only 36% of this amount, a mere .36 lodestar multiplier, in accordance with the cap imposed by the settlement agreement.  The Court finds further restricting the fee recovery to the benchmark would penalize class counsel for their extensive work on this case and inadequately compensate them for the years they have spent in litigation.  Class counsel faced significant financial risks in undertaking and prosecuting this litigation on a contingency basis, especially because this action involved complex scientific evidence and the use of expensive experts.  Other courts have

---

[3]  The Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates.  (*See, e.g.*, O'Brien Fee Decl. Exh. G [Robbins Geller Rudman & Dowd LLP firm resume]; O'Brien Decl. Exh. 8 [Blood Hurst & O'Reardon LLP firm resume].)  While counsel has not provided detailed billing records, the hours spent by counsel do not appear to be unreasonable in light of the extensive litigation in this and the related cases outlined in Mr. O'Brien's declaration, which included an appeal to the Eleventh Circuit in *Fitzpatrick* and other time-intensive tasks.  *See Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148–49 (9th Cir. 2000) (court may rely on summaries of the time spent on the case instead of time records where there is no evidence of collusion).

regularly awarded fee amounts above the benchmark in common fund cases.  *See*
*Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("The
typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the
total settlement value, with 25% considered the benchmark.  However, the exact
percentage varies depending on the facts of the case, and in most common fund cases, the
award exceeds that benchmark."  (internal quotation marks and citations omitted)).
Further, no class member has objected to the settlement or class counsels' requested fee
award.  (Supplemental Keough Decl. Regarding Notice and Settlement Administration ¶
6.)  Accordingly, the Court finds that class counsels' request is reasonable and approves
an attorneys' fee award of $2.55 million.

Class counsel also seek an award of costs in the amount of $896,387.09.  The
Stipulation provides that class counsel may seek "an award of out-of-pocket expenses
reasonably incurred in prosecution of the Action and the other Actions."  (Stipulation at §
X(A).)  Consistent with this provision, the law allows attorneys to "recover their
reasonable expenses that would typically be billed to paying clients in non-contingency
matters."  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal.
2008).  Reasonable expenses may include items such as "1) meals, hotels, and
transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger
and overnight delivery; 6) online legal research; 7) class action notices; 8) experts,
consultants, and investigators; and 9) mediation fees."  *In re Immune Response Sec.*
*Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).  Here, class counsel has thoroughly
documented and substantiated the reasonableness of their out-of-pocket costs, which
include meals, hotels, and transportation; photocopying; filing, witness, and other fees;
court hearing and deposition reporting, and transcripts; online research; database
management charges; and, most significantly, class action notices and expert, consultant,
and investigator fees.  (O'Brien Fee Decl. ¶ 5, Exhs. B–F; O'Reardon Decl. ¶ 10;

O'Brien Decl. Exhs. 3–7.)  Despite the high dollar figure, class counsel's costs do appear reasonable, and neither General Mills nor any class members oppose the request. Accordingly, the Court approves the payment of $896,387.09 in costs to class counsel.

### e.  Service Awards

Consistent with the terms of the Stipulation, Plaintiff moves for service award payments to himself and the named plaintiffs in the *Fitzpatrick*, *Amin*, and *Brock* actions in the amount of $1,500 each.  (Stipulation at § X(C).)  A class action need not necessarily treat all class members equally.  *Cohen v. Resolution Trust Corp.*, 61 F.3d 725, 728 (9th Cir. 1995), *vacated and appeal dismissed*, 72 F.3d 686 (9th Cir. 1996). "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59 (emphasis omitted).  However, "when a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness."  *Cohen*, 61 F.3d at 728 (quoting *Holmes v. Continental Can. Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983)).  The Ninth Circuit has recently cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian Info. Solutions Inc.*, --- F.3d ----, No. 11-56482, 2013 WL 1831760, at * 5 (9th Cir. May 2, 2013) (holding that adequacy requirement was not met where settlement conditioned incentive awards on representatives' support for settlement).

///

///

Plaintiff Jeremiah Johnson participated in this case by consulting with his attorneys, agreeing to represent the interests of all of the class members, reviewing drafts of the complaint, assisting in discovery, including answering interrogatories, and communicating with his attorneys by email, telephone, and in person regarding his hours-long videotaped deposition.  (O'Brien Decl. Exh. 9 [Johnson Decl.].)  Nipul S. Amin, the plaintiff in the *Amin* action, similarly participated in responding to discovery requests, sat for a full-day deposition, executed a declaration in support of class certification, has been in regular contract with attorneys, and has reviewed correspondence and legal documents. (O'Brien Decl. Exh. 10 [Amin Decl.].)  Melissa Brock, the plaintiff in the *Brock* action, was involved in the investigation and litigation in her case, met with her attorneys multiple times, reviewed and discussed the complaint and other documents with her attorneys, and sat for a half-day deposition.  (O'Brien Decl. Exh. 11 [Brock Decl.].)  Julie Fitzpatrick, the plaintiff in the *Fitzpatrick* action, consulted with her attorneys and other counsel, reviewed multiple drafts of the lawsuit, actively participated in discovery, sat for a full-day deposition, and continued with the lawsuit even after General Mills told her that under Florida law, she could be required to pay General Mills' attorneys' fees if it prevailed.  (O'Brien Decl. Exh. 12 [Fitzpatrick Affadvit].)  All of these individuals undertook sufficient action in their respective cases on behalf of the class to justify incentive awards, and the awards do not destroy the adequacy of the class.  Accordingly, the Court approves payments of $1,500 to Jeremiah Johnson, Nipul S. Amin, Melissa Brock, and Julie Fitzpatrick.

///
///
///
///
///

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion for final approval of the class action settlement, including awards for attorneys' fees, costs, and service awards, is **GRANTED**.


DATED:      June 17, 2013


_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE